## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

HEATHER SMITH, individual and on behalf of all other similarly situated,

        Plaintiff,

v.

WHALECO INC. d/b/a TEMU,

        Defendant.

Case No:  CIV-23-559-D

Class Action

## EXHIBIT 2

## Declaration of Michael Trinh

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

HEATHER SMITH, individually and on
behalf of all others similarly situated,

               *Plaintiff*,

    v.

WHALECO INC. d/b/a TEMU,

               *Defendant*.

Case No. 5:23-CV-00559-D

## <u>DECLARATION OF MICHAEL TRINH</u>

I, Michael Trinh, declare pursuant to 28 U.S.C. §1746 as follows:

1.      I am over 18 years of age. I have personal knowledge of the facts stated herein, and if called upon to testify thereto, I could and would competently do so.

2.      I submit this Declaration in support of the renewed "Motion to Compel Arbitration" (the "Motion"), filed contemporaneously herewith, by Defendant Whaleco Inc. d/b/a Temu ("Temu") in the above-captioned litigation (the "Action").

3.      I am the Customer Service Manager for Temu. I have held this position since October 2022. In my professional capacity at Temu, I am familiar with and knowledgeable of Temu's business operations, its policies and practices generally, the products it offers and sells to customers, and its various marketing programs and the terms and conditions applicable thereto. This includes, but is not limited to, the processes by which consumers may sign up for and use an account on Temu's website, www.temu.com (the "Website"),

1

to download and use Temu's smartphone application (the "App"), and to sign up (*i.e.*, agree) to receive marketing communications (including text messages) from or on behalf of Temu. In my professional capacity, I am also generally familiar with Temu's business records and its records-keeping policies and practices, including records relating to its marketing programs, the Website, and the App.

4.      I have also read and am familiar with the allegations in the Complaint filed in the Action by Plaintiff Heather Smith ("Plaintiff"). I am also familiar with the facts in the Motion, which are further discussed below.

5.      All of the records described herein are regularly kept and/or maintained in the course of business at Temu as part of its regular business practices, were made near or at the time of the act or event recorded or were made reasonably soon thereafter, and were made or maintained by an employee, agent, or other representative of Temu. As part of my job duties, I have access to and have searched for and reviewed such records, and did so for purposes of this Declaration.

6.      Put simply, Temu runs a global online retail marketplace (including the Website and App) where consumers can purchase a variety of products. It operates the marketplace globally and throughout the entire United States. To participate in the marketplace, a consumer must either download Temu's App or visit its Website and set up an account. This is required. A consumer cannot participate in the marketplace without completing all of the account signup or login steps. There are several ways to register or logon to the App or Website. The process used in the Action to register and login is described below.

2

7.    When a consumer registers the App or signs up for a Temu account through the Website, or each time the consumer logs on to their Temu account via the App or Website using their credentials thereafter (*i.e.,* to the extent he or she is not already logged in when they access or use the App or Website and need to log in again), the consumer must also agree, among other things, to Temu's "Terms of Use" (the "Terms"). This is through the registration and login process described below. They must agree to the Terms to proceed.

8.    Temu's business records reflect that, on December 30, 2022, someone using the phone number 405-***-9888 (hereafter, the "Subject Number") downloaded the App using an Android smartphone associated with the Subject Number, and at that time completed all of the registration and account sign up steps, as further described in the Motion and below, including agreeing to the Terms.[1] My understanding, based on my review of the Complaint, Temu's records, and publicly available information, is that the Subject Number is owned or used by, or is otherwise associated with, Plaintiff.

9.    The signup and registration process for the App on December 30, 2022, as is relevant to Plaintiff and the Action, was as follows: after downloading the App, the first page that the aforementioned user would have seen is accurately reflected in **Exhibit A**, attached hereto (*see* Page 1). This screen (as well as other screens described below) would have appeared on the user's phone in a single window, with an all-white background and with text that was all roughly the same size throughout (roughly between 13 to 15 pixels), with no advertisements or other copy. It is designed to be clear and legible on any device.

---

[1] The full Subject Number has not been provided here for privacy reasons but can be made available upon request.

10.    On that first registration page, the user was presented the options to "Continue" setting up a Temu account using a cell phone number or an email address, or to "Continue" using other pre-existing Google, Apple, Facebook, or Twitter accounts to complete the registration. As relevant to the Action, the latter was used. The text at the bottom of the first page stated "By continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**." The bolded text represents functional hyperlinks that, if clicked, would have taken the user to a separate page for the Terms or Temu's privacy and cookie policy.

11.    To continue and complete the App registration and account sign up process, or to subsequently logon to the account if necessary, the user must click on one of the "Continue" login buttons in the middle of the page reflected in Exhibit A. The button must be pressed to proceed. As relevant to Plaintiff and the Action, Temu's records reflect the user clicked the "Continue with Google" button and completed all the steps. The "Continue" buttons are used to allow the user to continue with the registration/logon process and confirm they are agreeing to the Terms or Temu's privacy and cookie policy.

12.    After clicking the "Continue with Google" button, a pop-up window is displayed, giving the user the options to "Cancel" or "Continue." *See* Exhibit A at p. 2. As relevant to the Action, the user in this instance clicked "Continue" and was taken to a separate all white page. *See* Exhibit A at p. 3. This page gave the user the option to click a button either associated with an existing Google account the user may have already been logged into on the phone, or to "Use another account." At the bottom of this page, immediately underneath these two buttons, appeared text stating: "To continue, Google will share your name, email address, language preference, and profile picture with Temu. Before

4

using this app, you can review Temu's **privacy policy** and **terms of service**." The bolded text on this page was also in a blue contrasting font (in addition to being in bold), and represented clickable hyperlinks to Temu's Terms and its privacy and cookie policy. As relevant to Plaintiff and the Action, Temu's records reflect that the user clicked the top button on this page (*i.e.*, to use an existing Google account), completing the Temu account signup process. All of these steps would have had to have been completed to set up the account.

13.     A true and correct copy of Temu's operative Terms relevant to the Action is attached hereto as **<u>Exhibit B</u>**. At all times relevant to the Action, the Terms have contained a binding individual arbitration agreement and a separate class action waiver provision. The user must agree to the Terms during the initial sign up/registration process described above and each time they log on to their account (if needed), either through the App or the Website.

14.     If a user subsequently logs onto their account via the App or Website using their Google account (or other preexisting accounts, like Apple) after the initial registration process discussed above, the login screen is identical in appearance to the one reflected in Exhibit A. The login process is essentially the same as described above (however, the pages shown after the user clicks a "Continue" button can differ, depending on the account used).

15.     As is relevant to Action, Temu's records reflect that, on March 30, 2023, someone used an Android smartphone associated with the Subject Number to log on to the Temu App, clicking the "Continue with Apple" button to do so, using what appears to be an Apple account associated with that phone. The format of the login page was the same as is reflected in Exhibit A described above: *i.e.*, the same page with an all-white background, roughly the same size text, the same "Continue" option login buttons, and the same language

at the bottom (except that this user was taken to a different second page after clicking the "Continue with Apple" button). This user was again informed at that time, on the login page, that "By continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**." The bold text represents clickable hyperlinks to the Terms and privacy and cookie policy.

16.     Plaintiff could not have set up or used her Temu account without completing all of the above steps (including clicking the buttons) and agreeing to the Terms each time.

17.     True and correct copies of Temu's records reflecting the registration and login for the Subject Number described above are attached hereto as **Exhibit C**.[2]

18.     Temu's business records further reflect that, on January 25, 2023, someone using the Subject Number subscribed (*i.e.,* provided express written consent) to receive marketing text messages from or on behalf of Temu. A true and correct copy of the page that a user would have seen at that time is reflected in **Exhibit D**, attached hereto. Plaintiff could not have received any text messages from or on behalf of Temu without completing this page, providing the Subject Number, and pressing the button on that page.

19.     Temu does not make or send any unsolicited telemarketing calls or text messages. Nothing in this Declaration should be understood as an admission of liability by Temu, or an admission of any fact alleged by Plaintiff in the Action.

20.     My previous declaration in this matter should be considered withdrawn. The purpose of this declaration is to complete and correct the factual record regarding the Motion.

---

[2] These records have also been redacted for privacy reasons but are available upon request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Executed this 14th day of November 2023, in Boston, Massachusetts.

By: _____

Michael Trinh

# **EXHIBIT A**

## **REGISTRATION FLOW**



Smith v. Temu
Trinh Declaration - EXHIBIT A





# EXHIBIT B

**TEMU TERMS OF USE**

**Terms of Use**
**Last Updated: December 29, 2022**

Thank you for using Temu! These Terms of Use ("Terms") contain the rules and restrictions that govern your use of our applications, products, services and websites ("Services").

For purposes of these Terms and Policies (as defined below), we refer to:

- Whaleco Inc. and its affiliates as "Whaleco," "we" or "us," where Section 1.1 sets forth the applicable entity or affiliate that is providing the Services and that is entering into these Terms with you (the "Contracting Entity");
- Our marketplace platform, website and mobile apps, which allow third parties to set up online stores or otherwise sell products, and which may offer other features, products, services or content, including exchanges of information, as the "Temu platform" or "our marketplace app";
- Third parties that list and sell products and services through the Temu platform and our Services as "Seller(s)," and the products and services they sell as "Products";
- End users, including visitors to Temu platform and those who use our Temu platform to purchase Products from Sellers as "you."

Please read these Terms carefully, and if you have any questions, comments, or concerns regarding these Terms or the Services, please contact us at help@temu.com.

These Terms form a binding agreement between you and the applicable Contracting Party. By clicking completing the registration process and/or browsing the Services, you represent that (1) you have read, understand and agree to be bound by the Terms; (2) you are of legal age to form a binding contract with us; and (3) you have the authority to enter into the Terms personally. **You should not access or use the Services unless you agree to be bound all of these Terms.**

Your use of, and participation in, certain Services may be subject to additional policies we may publish from time to time ("Policies"), including our Privacy & Cookie Policy. If the Terms are inconsistent with the Policies, the Policies shall control with respect to the relevant subject matter. If you have a seller account, your use of the Services is also governed by the Seller Services Agreement. If there is a conflict between the Seller Services Agreement and these Terms, the Seller Services Agreement shall prevail.

PLEASE BE AWARE THAT SECTION 20 OF THE TERMS BELOW CONTAINS PROVISIONS GOVERNING HOW DISPUTES THAT YOU AND WHALECO HAVE AGAINST EACH OTHER WILL BE RESOLVED, INCLUDING WITHOUT LIMITATION, ANY DISPUTES THAT AROSE OR WERE ASSERTED PRIOR TO THE EFFECTIVE DATE OF THE AGREEMENT. SECTION 20 CONTAINS, AMONG OTHER THINGS, AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND WHALECO BE RESOLVED BY BINDING AND FINAL ARBITRATION.  UNLESS YOU OPT OUT OF THE AGREEMENT TO ARBITRATE WITHIN 30 DAYS OF THE EFFECTIVE DATE OF THE AGREEMENT: (1) YOU AND WHALECO WILL ONLY BE PERMITTED TO PURSUE DISPUTES OR CLAIMS AND SEEK RELIEF AGAINST THE OTHER PARTY ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING AND EACH OF US WAIVES OUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION; AND (2) EACH OF US IS WAIVING OUR RIGHT TO PURSUE DISPUTES OR CLAIMS AND SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY TRIAL.

Smith v. Temu
Trinh Declaration - EXHIBIT B

PLEASE NOTE THAT THE TERMS ARE SUBJECT TO CHANGE BY US IN OUR SOLE DISCRETION AT ANY TIME.  When changes are made, we will make a new copy of the Terms of Use Agreement, and any updated Policies, available on the Temu platform or within the marketplace app.  We will also update the "Last Updated" date at the top of the Terms of Use Agreement.  Any changes to the Terms will be effective immediately for new users of the Services for existing users with Accounts, provided that any material changes shall be effective for users who have an Account with us upon the earlier of thirty (30) days after posting notice of such changes on the Services.  Company may require you to provide consent to the updated Agreement in a specified manner before further use of the Services is permitted.  If you do not agree to any change(s) after receiving a notice of such change(s), you shall stop using the Services. Otherwise, your continued use of the Services constitutes your acceptance of such change(s).  PLEASE REGULARLY CHECK THE WEBSITE TO VIEW THE THEN-CURRENT TERMS.

**1.    Parties and Independence of Sellers**

1.1.    Your location of residence determines the Contracting Party with whom you enter the Terms:

- If you reside in the United States or Canada, you contract with Whaleco Inc., a Delaware company;
- If you do not reside in the United States or Canada, you contract with Elementary Innovation Pte. Ltd., a Singapore company.

The relevant Contracting Party may change as we expand our business.

1.2.    As a marketplace, we do not own or sell the Products listed on the Temu platform. When you purchase a Product from a Seller through the Temu platform, the transaction is solely between you and the Seller. The Seller is responsible for fulfilling your order and for Seller's Products and providing any post-sale services. We provide technical and operational support for our marketplace app and acts as payment collection agent for the Seller for the limited purpose of accepting funds from you.

**2.    Services and Role of Sellers**

2.1    We operate our marketplace app that allows Sellers and users to exchange information and complete purchase transactions.

2.2    Sellers are responsible for setting up and operating their stores on our marketplace app, preparing and uploading Product listing information (including product descriptions and prices) onto their stores, and procuring Products and fulfilling your orders. Sellers may not be located in the same country or region as you are, which may have an effect on taxes, customs or the applicability of consumer protection rules.

2.3    We may, in relation to providing our Services or acting as payment collection agent for Sellers, facilitate payment processing, returns, refunds, and other customer services and transaction services in connection with your purchases of Products from Sellers. We do not have control over and do not guarantee the existence, quality, safety, suitability, or legality of the Products or the truthfulness, accuracy or legality of any information contained in the Product listings or other information provided by Sellers or other users. Furthermore, we are not responsible for the performance or conduct of Sellers or other users, including the ability of Sellers to sell Products or that a Seller will actually complete a transaction for the Products. Except where we clearly indicate otherwise, we do not endorse any Seller, store, Product, or Product listing.

2.4    We act as payment collection agent for Sellers solely for the limited purpose of accepting payments from you. Upon our receipt of your payment in the amount as agreed between you and the Seller, your payment obligation to the Seller for such amount is fulfilled. We are responsible for remitting the funds to the Seller in the manner described in the Seller Services Agreement.

2.5    Please check all descriptions and restrictions regarding the Product you are interested in thoroughly before you place your order with a Seller. If you have any special circumstance (e.g., a medical or health condition and/or special need) that may affect or be affected by the Product you wish to purchase, it is solely your responsibility to inform the Seller before you place your order with the Seller.

**3.    User Requirements and Registration**

3.1    To use the Services, you represent that you are at least eighteen (18) years old and of legal age to form a binding contract. Products for children's use may be sold by Sellers. However, these Products are intended for sale to adults. Certain Products may be intended for individuals of certain ages or "mature audiences" only. By ordering such Products, you certify that you are old enough to view, use, own, or receive them. We are not responsible for third-party content that you may find offensive, indecent, or objectionable.

3.2    You may not use the Services if: (a) you cannot enter into a binding contract with us; (b) you are located in a country embargoed by the United States; (c) you are on a U.S. Agency list of prohibited persons or entities, such as the Treasury Department's list of Specially Designated Nationals; or (d) you are banned from using the Services by us, in our sole discretion.

3.3    You may be required to create an account, and select a password and user name. When creating your account on the Temu platform or the marketplace app ("Account"), you promise to provide true, accurate, complete, and updated information about yourself, including contact details. You are responsible to keep your registration information with us up to date. You are responsible for all activities that occur under your Account.  You agree that you shall monitor your Account to restrict use by minors, and you will accept full responsibility for any unauthorized use of the Services by minors.  You may not select as your user name a name that you don't have the right to use, or another person's name with the intent to impersonate that person. You may not transfer your account to anyone else without our prior written permission. You agree not to create an Account or use the Services if you have been have been permanently banned from any of the Services. You may not share your Account or password with anyone, and you agree to notify us immediately of any unauthorized use of your password or any other breach of security; and exit from your Account at the end of each session.

3.4    You may also register an Account by connecting through a social network service account and its credentials (an "SNS Account"). If you access the Services through a SNS as part of the functionality of the Services, you may link your Account with SNS Accounts by allowing us to access your SNS Account, as is permitted under the applicable terms and conditions that govern your SNS Account.  You represent that you are entitled to grant us access to your SNS Account (including, but not limited to, for use for the purposes described herein) without breach by you of any of the terms and conditions that govern your SNS Account and without obligating us to pay any fees or making us subject to any usage limitations imposed by such SNS.  By granting us access to any SNS Accounts, you understand that we may access, make available and store (if applicable) any Content (as defined below) that you have provided to and stored in your SNS Account (**"SNS Content"**) so that it is available on and through the Services via

your Account.  Unless otherwise specified in the Agreement, all SNS Content shall be considered to be User Submissions for all purposes of the Terms.  Depending on the SNS Accounts you choose and subject to the privacy settings that you have set in such SNS Accounts, personal information that you post to your SNS Accounts may be available on and through your Account on the Services. Please note that if a SNS Account or associated service becomes unavailable, or our access to such SNS Account is terminated by the SNS, then SNS Content will no longer be available on and through the Services.  You have the ability to disable the connection between your Account and your SNS Accounts at any time by accessing the "Settings" section of the Services. PLEASE NOTE THAT YOUR RELATIONSHIP WITH THE SNS PROVIDERS ASSOCIATED WITH YOUR SNS ACCOUNTS IS GOVERNED SOLELY BY YOUR AGREEMENT(S) WITH SUCH SNS PROVIDERS, AND WE DISCLAIM ANY LIABILITY FOR PERSONAL INFORMATION THAT MAY BE PROVIDED TO IT BY SUCH SNS PROVIDERS IN VIOLATION OF THE PRIVACY SETTINGS THAT YOU HAVE SET IN SUCH SNS ACCOUNTS.  We make no effort to review any SNS Content for any purpose, including but not limited to, for accuracy, legality or noninfringement, and we are not responsible for any SNS Content.

**4.    Rules and Restrictions**

4.1    You agree to use the Services for your own use, and not on behalf of or for the benefit of any third party, and only in a manner that complies with these Terms, the Policies, and all laws and regulations applicable to you. If your use of the Services is prohibited by any applicable laws, then you are not authorized to use the Services. We are not responsible if you use the Services in a way that breaks the law.

4.2    You are responsible for all activity associated with your account. Therefore, you must protect the security of your account and password and not share them with any third person. You should notify us immediately of any unauthorized use or security breach of your account.

4.3    You must not create multiple accounts.

4.4    Any sweepstakes, contests, raffles, surveys, games, or similar promotions (collectively, "Promotions") made available through the Services may be governed by separate rules. If the rules for a Promotion conflict with these Terms, such rules will govern.

4.5    When using the Services, you agree and undertake not to take any action or make available any User Submissions through the Services that may:

(1)    infringe or violate another person's rights, including intellectual property rights;
(2)    violate any of these Terms, the Policies, and applicable laws and regulations;
(3)    engage in any unlawful, harmful, abusive, misleading, false, fraudulent, deceptive, threatening, harassing, defamatory, libelous, pornographic, obscene, profane or otherwise objectionable or discriminatory conduct;
(4)    circumvent or attempt to circumvent any of these Terms, the Policies or other rules relating to the Services including the Promotions;
(5)    constitute unauthorized or unsolicited advertising, junk or bulk e-mail;
(6)    collect personal data from other users or use any such information collected from the Services;
(7)    engage in any conduct that is likely to cause a security breach of your account;
(8)    obtain another user's password, account, or other security information;
(9)    use a third party's credentials, conceal your true IP address, or otherwise impersonate or misrepresent your identity or your affiliation with any person or entity;

(10)  violate or interfere with the proper functioning or security of any computer network;

(11)  run any form of auto-responder or "spam" on the Services, any process that runs or is activated while you are not logged into the Services, or any process that otherwise interferes with the proper functioning of the Services (including by placing an unreasonable load on the Services' infrastructure through overloading, "flooding," "mail bombing" or crashing the Services);

(12)  potentially harm the Services, including but not limited to the violation of any security features of the Services, use of manual or automated software or other means to access, "crawl," "scrape," or "spider" any page, data, or portion of or relating to the Services or the introduction of viruses, worms or similar harmful code into the Services;

(13)  copy or store any significant portion of the content on the Services without written consent from us;

(14)  decompile, reverse engineer, or otherwise obtain the source code or underlying ideas or information of or relating to the Services;

(15)  buy any Products which you are not legally allowed to purchase or use;

(16)  abuse any promotions, discounts, or other benefits offered by us or Sellers, or manipulate the price of any listed Products or interfere with Seller listings;

(17)  attempt to do anything, or permit, encourage, assist, or allow any third party to do anything, prohibited in this list.

In addition to any other remedies available to us, a violation of any of the foregoing is grounds for:

(1)  removal or refusal to post any User Submission for any or no reason in our sole discretion;

(2)  cancellation of one or more purchases of Products;

(3)  cancellation of Rewards or payments due; and/or

(4)  suspension or termination of your access or use the Services.

If we become aware of any possible violations by you of the Terms, we reserve the right to investigate such violations.  If, as a result of the investigation, we believe that criminal activity has occurred, we reserve the right to refer the matter to, and to cooperate with, any and all applicable legal authorities.  We are entitled, except to the extent prohibited by applicable law, to disclose any information or materials on or in the Services, including User Submissions, in our possession in connection with your use of the Services, to (i) comply with applicable laws, legal process or governmental request; (ii) enforce the Terms and Policies, (iii) respond to any claims that a User Submission violates the rights of third parties, (iv) respond to your requests for customer service, or (v) protect the rights, property or personal safety of us, our users or the public, and all enforcement or other government officials, as we in our sole discretion believe to be necessary or appropriate.

**5.    Privacy**

5.1    Our Privacy & Cookie Policy provides information about how we collect, use, and disclose your personal information when you access, visit or use the Services. In connection with your use of the Services, you acknowledge and agree that we may collect, access, use, preserve and disclose your personal information (including your account and user information) as described in our Privacy & Cookie Policy. The Privacy Policy is part of and is governed by these Terms and by agreeing to these Terms, you agree to be bound by the terms of the Privacy & Cookie Policy.

5.2    Your purchases are fulfilled by Sellers. In order to fulfill your purchases, Sellers need information about you, such as your mailing address. You acknowledge and agree that when you make a purchase, you authorize us to share your information (including your

name, street address, and phone number) with the Seller you are purchasing from to facilitate the fulfilment of your order.

**6.    Communications**

6.1    By entering into these Terms or using the Services, you agree to receive communications from us, including via e-mail, text message, calls and push notifications. You agree that we may communicate with you using email and text messages, at any email address or telephone number that you provide us, to: (i) notify you regarding your account; (ii) troubleshoot problems with your account; (iii) resolve a dispute; (iv) collect a debt; (v) poll your opinions through surveys or questionnaires; (vi) notify you regarding order, payment and delivery updates; (vii) send you authentication texts; or (viii) as otherwise necessary to service your Account or enforce these Terms, the Policies, applicable laws and regulations, or any other agreement we may have with you. Standard text messaging charges applied by your cell phone carrier will apply to text messages that we send.

6.2    If you would like to receive our marketing materials via mobile texts and alerts, you may sign up to do so. By signing up, you provide your consent to receive marketing texts or other mobile messages from or on behalf of us, including but not limited to our promotional messages on short code 52927, at the mobile number you provide us. Message frequency varies. Message and Data Rates may apply. You acknowledge that you are not required to consent to receive marketing texts as a condition of using the Services. If you wish to opt out of SMS texts from us, you can reply STOP to the corresponding numberfrom your mobile device receiving the messages. However, you acknowledge that opting out of receiving texts may impact your use of the Services. If you would like to resume the subscription, reply UNSTOP to the corresponding number. You may also reply "HELP" for assistance. We will not share your consent, opt-in and opt-out records with any third parties other than text messaging service providers and aggregators. For further assistance, please contact help@temu.com.

6.3    If you wish to opt out of marketing emails, you can unsubscribe from our marketing email list by following the unsubscribe options in the marketing email itself.

6.4    Our communications with you may be through a third-party service provider. You acknowledge and consent that, subject to our Privacy Policy, your communications with us, our agents or Sellers may be recorded, monitored and stored for quality control and training purposes, or to protect your, our and/or Sellers' interests.

**7.    User Submissions**

7.1    "User Submission" means anything posted, uploaded, shared, submitted, stored, or otherwise provided by you through the Services, including suggestions, comments, reviews, ratings, photos, videos, or other feedback or materials, and may be viewable by Sellers and/or other users. Any User Submission posted by you in your Account may not contain nudity, violence, sexually explicit, or offensive subject matter as determined by us in our sole discretion.

7.2    For all User Submissions, you grant us a fully-paid, royalty-free, perpetual, irrevocable, non-exclusive, transferable, sublicensable, worldwide right (including any moral rights) and license to use, license, store, display, reproduce, save, modify (e.g. to make sure the User Submission is viewable on different systems and devices), create derivative works, publicly perform, publicly display, distribute, translate, or otherwise act with respect to such User Submissions as we determine is necessary to operate, market,

and advertise the Services, including to present, display, or perform such User Submissions in accordance with your preferences.

7.3     You acknowledge and agree that all User Submissions (including the user name under which you made them) non-confidential and non-proprietary. We may freely display, disclose, reproduce, modify, license, transfer, distribute and otherwise use the User Submissions in any manner, without any restriction or compensation to you.

7.4     You warrant that you own or otherwise control all rights to the User Submissions and that our use of any User Submission will not infringe upon or violate the rights of any third party or violate any of the rules and restrictions contained in these Terms (including those included in Section 4 herein).

7.5     We do not endorse User Submissions and they do not represent our views. We expressly disclaim any liability for User Submissions or damages resulting from them. We expect users to maintain a high level of integrity when submitting User Submissions that are viewable by other users, especially with respect to ratings and reviews of Products. You undertake that the User Submissions that are viewable by other users are made truthfully in good faith and based only on your firsthand experience. You further undertake that you will prominently indicate as such if the User Submission was sponsored or paid for in any way. You acknowledge that we have no obligation to pre-screen User Submissions, although we reserve the right to pre-screen, refuse, exclude or remove any User Submission for any reason or no reason, at our discretion and without notice to you. By entering into the Terms, you hereby provide your irrevocable consent to such monitoring.  You acknowledge and agree that you have no expectation of privacy concerning the transmission of your User Submissions.  In the event that we pre-screen, refuse, exclude or remove any User Submissions, you acknowledge that we will do so for our benefit, not yours.  Without limiting the foregoing, we shall have the right to remove any User Submissions that violate the Terms or are otherwise objectionable.

**8.     Ownership**

8.1     You acknowledge and agree that all materials displayed, performed, or available on or through the Services, including, but not limited to, text, graphics, data, articles, photos, images, illustrations and User Submissions (collectively, "Content") are protected by copyright and/or other intellectual property laws throughout the world. You undertake to comply with all copyright notices, trademark rules, information, and restrictions contained in the Content, and not to copy, reproduce, modify, translate, publish, broadcast, transmit, distribute, perform, upload, display, license, sell, or otherwise use for any purpose any Content not owned by you without the prior consent of the owner of that Content.

8.2     We respect others' intellectual property rights, and we reserve the right to delete or disable Content alleged to be infringing upon another person's intellectual property rights and to terminate the accounts of the alleged infringers. See our Intellectual Property Policy to learn how to report potentially infringing content.

8.3     You acknowledge and agree that We own or license the Services. You undertake not to modify, publish, transmit, participate in the transfer or sale of, reproduce, create derivative works based on, or otherwise exploit any of the Services, except as expressly provided in this Section 8.

8.4    Subject to your compliance with these Terms and all applicable policies, rules, and guidelines, and your payment of any applicable fees, We or our content providers grant you a limited, non-exclusive, non-transferable, non-sublicensable license to access and make personal and non-commercial use of the Services for the sole purpose of using the Temu platform. All rights not expressly granted to you in these Terms or any policies or guidelines are reserved and retained by us or our licensors, suppliers, publishers, rightsholders, or other content providers. The licenses granted by us terminate if you do not comply with these Terms or any applicable policies, rules, or guidelines.

8.5    You may not make any commercial use of any of the information provided on the Services or make any use of the Services for the benefit of another business unless explicitly permitted by us in advance. You may not solicit, advertise for, or contact in any form users for employment, contracting or any other purpose not related to the Services facilitated through the Temu platform. If you violate this provision, we reserve the right to refuse service, terminate accounts, and/or cancel orders in our discretion.

**9.    Responsibilities; Third Party Risks**

9.1    You acknowledge and agree that any Content publicly posted or privately transmitted through the Services is the sole responsibility of the person that posted or transmitted such Content. You access and use the Content, and interact with other users, at your own risk. We are not responsible for any errors, mistakes, omissions, inaccuracies in the Content. We do not control the Content and have no duty to take any action regarding how you may interpret, use or react to the Content. We have no obligation to review or monitor, and do not approve, endorse, or make any representations or warranties with respect to, Content. You also understand that we cannot guarantee the identities of the users with whom you interact while using the Services and are not responsible for which users gain access to the Services.

9.2    You are responsible for all Content you contribute, in any manner, to the Services, and you represent and warrant you have all rights to contribute such Content to the Services in such manner.

9.3    The Services may contain links or connections to third-party websites or services that are not owned or controlled by us. We have no control over, and assume no responsibility for, the content, accuracy, privacy policies, or practices of or opinions expressed in any third-party websites or services. In addition, we will not and cannot monitor, verify, censor, or edit the content of any third-party website or service. You acknowledge and agree that we are not responsible for any risks resulting from your access or use of any third party websites or services. We encourage you to be aware when you leave the Services and to read the terms of use and privacy policy of each third-party website or service that you visit or use.

9.4    Your interactions with Sellers, other users, other entities or individuals as a result of your use of the Services, including communications, payments, performances and deliveries, are solely between you and such third parties; provided, however, that Company reserves the right, but has no obligation, to intercede in such disputes. You should make whatever investigation and/or seek whatever professional advice as you feel necessary or appropriate before proceeding with any transaction with any of these third parties. You acknowledge and agree that we are not responsible for any loss or damage incurred as the result of such interactions. You agree that Company will not be responsible for any liability incurred as the result of such interactions.

9.5   It is a material breach of these Terms to arrange for the sale of listed items from, or the payment of fees to, Sellers outside the context of the Temu platform for the purposes of circumventing the obligation to pay the fee for Products purchased through the Services.

**10.    Release**

10.1  We expressly disclaim any liability that may arise between users of the Temu platform, including any participants in our marketplace app. If there is a dispute between you and a Seller, another user, or any third party on our marketplace app, we are under no obligation to become involved.   Because we are not a party to the actual contracts between you and Sellers, to the fullest extent permitted under applicable law, you release us, our parents, subsidiaries, affiliates, directors, officers, employees, agents and successors from all claims, demands, and damages of every kind or nature, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising out of or in any way related to such disputes and/or the Services, including relating to the purchase of use of Products and the activities, performance or conduct of any Sellers.

IF YOU ARE A CALIFORNIA RESIDENT, YOU HEREBY WAIVE CALIFORNIA CIVIL CODE SECTION 1542, WHICH STATES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY." IF YOU ARE NOT A CALIFORNIA RESIDENT, YOU WAIVE YOUR RIGHTS UNDER ANY STATUTE OR COMMON LAW PRINCIPLE SIMILAR TO SECTION 1542 THAT GOVERNS YOUR RIGHTS IN THE JURISDICTION OF YOUR RESIDENCE.

**11.    Purchases; Pricing**

11.1  You are responsible for reading the full Product listing before purchasing a Product. By confirming your purchase, you agree to pay all applicable fees, taxes, shipping costs and other amounts associated with your purchase. Further, to the extent applicable, you acknowledge your responsibility for sales tax, VAT and customs duties. You agree that, where applicable, you will act as the importer of the products purchased and you hereby authorize us to appoint a freight forwarding agent to act as your direct representative and pay any sales tax, VAT and customs duties on your behalf. Please note that sales tax, VAT, customs duties, and similar charges collected at the time of purchase are estimated values and may be subject to change depending on applicable laws. If additional amounts are assessed, you are responsible for them. We will not be liable if a Product is delayed or denied customs clearance as a result of your failure to pay such amounts. When a purchase is made pursuant to a shipping contract, the risk of loss and title for Product pass to you upon delivery of the Product to the carrier.

11.2  Third-party service providers for payment services ("Payment Processor") may charge you fees for your purchases made through the Services. Such processing fees will be disclosed to you via our marketplace app.  Your use of the Services and the payment processing provided by the Payment Processor is subject to your agreement with the Payment Processor, as may be modified from time to time. As a condition of using the payment services, you must provide accurate and complete information, and you authorize us to share this information with the Payment Processor.

11.3  In order to make purchases, you must provide accurate and complete information for a valid payment method, such as a credit card, that you are authorized to use. You must

promptly update your account with any changes related to your payment method. BY PROVIDING INFORMATION FOR A PAYMENT METHOD, YOU AUTHORIZE US OR OUR AGENTS OR PAYMENT SERVICE PROCESSORS TO CHARGE THE PAYMENT METHOD FOR: (A) AMOUNTS DUE FOR PURCHASED PRODUCTS; (B) ANY AND ALL APPLICABLE CUSTOMS, TAXES AND SHIPPING COSTS; AND (C) ANY OTHER CHARGES INCURRED IN CONNECTION WITH YOUR USE OF THE SERVICES. YOUR PAYMENTS ARE NON-REFUNDABLE EXCEPT AS EXPRESSLY PROVIDED IN APPLICABLE POLICIES.

11.4 You contract directly with Sellers for the purchase of Products, and we are not a party to such sales; however, we facilitate these sales. Sellers set the listing prices (including any reference or strike-through prices) of the Products they offer on our marketplace app. Sellers also provide all other information in the Product listings. While we require Sellers to provide accurate information, we cannot guarantee the truthfulness, accuracy or completeness of the information in Product listings. Therefore, we do not represent, warrant, or guarantee that Sellers actually offered or sold Products at strike-through prices. You should not rely on the strike-through price in your purchase decision. If comparing prices is important to your purchase decision, you should do your own comparison before making a purchase.

11.5 Pricing or availability errors may occur from time to time. We reserve the right to cancel any order with pricing or availability error, with no further obligations to you, even after your receipt of an order confirmation or shipping notice.

## 12.    Refunds, Exchanges and Related

12.1 We want you to be satisfied with your purchases through the Services. You are entitled to refund and may return the purchased products pursuant to our Return and Refund Policy. Please follow the instructions in the policy If you want to request a refund. You acknowledge and agree that: (i) We acting as payment collection agent for Sellers may issue a refund on behalf of the relevant Seller in accordance with the Return and Refund Policy.; and (ii) if you wish to pursue any other remedy, you must seek that remedy directly from the Seller.

Unless otherwise described in the Return and Refund Policy, the refund will not cover customs, taxes, or any return shipping costs you may incur in the refund process.

## 13.    Rewards

13.1 You may receive credits, coupons, cash, gifts or other kinds of reward by use of the Services (collectively, "Rewards"). Some rewards may only be used for discounts on or payment for eligible purchases on or through the Services (but note that not all Products may be eligible) and cannot be redeemed for cash, except in jurisdictions where required by law. You should read carefully the information and applicable rules of different kinds of rewards.

## 14.    Ending Our Relationship

14.1 You are free to stop using the Services at any time. We are also free to terminate or suspend your use of the Services or your account, for any reason in our discretion, including your breach of these Terms. You acknowledge and agree that we have the sole right to decide whether you are in violation of any of the restrictions set forth in these Terms. Even after your use of the Services is terminated or suspended, these Terms will remain enforceable against you and any unpaid amount you owe to us or Sellers will remain due.

14.2  If your account is terminated for any reason, all Content and Reward associated with your account will be destroyed and cancelled. You should try to use any remaining Reward before the date on which such termination becomes effective.

14.3  All provisions of the Terms which by their nature should survive, shall survive termination of these Terms, including without limitation, ownership provisions, warranty disclaimers, and limitation of liability.

## 15.    WARRANTY DISCLAIMER.

15.1  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAWWE EXPRESSLY DISCLAIM ALL REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, RELATING TO THE SERVICES, ANY CONTENT OR ANY PRODUCT OFFERED OR PURCHASED ON OR THROUGH THE SERVICES, INCLUDING WITHOUT LIMITATION ANY WARRANTIES OF PRODUCTS' CONDITION, QUALITY, DURABILITY, PERFORMANCE, ACCURACY, RELIABILITY, MERCHANTABILITY. FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT, OR ANY WARRANTIES OF THE CONTENT'S ACCURACY, CORRECTNESS, COMPLETENESS, OR LEGALITY. ALL SUCH WARRANTIES, REPRESENTATIONS, CONDITIONS, AND UNDERTAKINGS ARE HEREBY EXPRESSLY EXCLUDED. NO COMMUNICATION OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED FROM OR THROUGH THE SERVICES SHALL CREATE ANY WARRANTY NOT EXPRESSLY STATED HEREIN. IN ADDITION, WE MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING SUGGESTIONS OR RECOMMENDATIONS OF PRODUCTS OFFERED OR PURCHASED ON OR THROUGH THE SERVICES. This Section 15 does not affect in any way our Return and Refund Policy for Products purchased on the Services.

15.2  YOUR USE OF THE SERVICES AND YOUR USE OF ANY PRODUCT OFFERED AND PURCHASED ON OR THROUGH THE SERVICES ARE AT YOUR OWN RISK. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, UNLESS EXPRESSLY PROVIDED OTHERWISE, THE SERVICES, PRODUCTS OFFERED AND PURCHASED ON OR THROUGH THE SERVICES, AND THE CONTENT ARE MADE AVAILABLE TO YOU ON AN "AS-IS" AND "AS-AVAILABLE" BASIS, WITH ALL FAULTS AND WITHOUT WARRANTIES OR ANY KIND.

15.3  YOU ACKNOWLEDGE AND AGREE THAT WHALECO PARTIES (AS DEFINED IN SECTION17.1) ARE NOT LIABLE, AND YOU AGREE NOT TO SEEK TO HOLD WHALECO PARTIES LIABLE, FOR THE CONDUCT OF THIRD PARTIES, INCLUDING OPERATORS OF EXTERNAL SITES, AND THAT THE RISK OF INJURY FROM SUCH THIRD PARTIES RESTS ENTIRELY WITH YOU. WE MAKE NO PROMISES WITH RESPECT TO, AND EXPRESSLY DISCLAIM ALL LIABILITY FOR: (1) PRODUCTS, SERVICES, INFORMATION, PROGRAMMING, AND/OR ANYTHING ELSE PROVIDED BY A THIRD PARTY THAT IS ACCESSIBLE TO YOU ON OR THROUGH THE SERVICES; OR (2) THE QUALITY OR CONDUCT OF ANY THIRD PARTY YOU ENCOUNTER IN CONNECTION WITH YOUR USE OF THE SERVICES.

15.4  YOU ACKNOWLEDGE AND AGREE THAT, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, YOU ASSUME FULL RESPONSIBILITY FOR YOUR USE OF THE SERVICES, INCLUDING YOUR INTERACTIONS WITH OTHER USERS OF THE SERVICES, AND THAT ANY INFORMATION YOU SEND OR RECEIVE DURING YOUR USE OF THE SERVICES MAY NOT BE SECURE AND MAY BE INTERCEPTED OR OTHERWISE ACCESSED BY UNAUTHORIZED PARTIES. YOU AGREE THAT,

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, WE ARE NOT RESPONSIBLE FOR ANY LOSS OR DAMAGE TO YOUR PROPERTY OR DATA THAT RESULTS FROM ANY MATERIALS YOU ACCESS OR DOWNLOAD FROM THE SERVICES.

15.5 IF YOU RELY ON ANY DATA OR INFORMATION OBTAINED ON OR THROUGH THE SERVICES, YOU DO SO AT YOUR OWN RISK. YOU ARE SOLELY RESPONSIBLE FOR ANY DAMAGE OR LOSS THAT RESULTS FROM YOUR USE OF SUCH DATA OR INFORMATION.

## 16. LIMITATION OF LIABILITY

16.1 NOTWITHSTANDING US ACTING AS PAYMENT COLLECTION AGENT FOR THE SELLER FOR THE LIMITED PURPOSES OF ACCEPTING FUND FROM YOU, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, UNDER NO CIRCUMSTANCES AND UNDER NO LEGAL THEORY (INCLUDING, WITHOUT LIMITATION, TORT, CONTRACT, STRICT LIABILITY, OR OTHERWISE) SHALL WHALECO PARTIES BE LIABLE TO YOU OR TO ANY OTHER PERSON FOR (A) ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY OR PUNITIVE DAMAGES OF ANY KIND, INCLUDING DAMAGES FOR LOSS OF DATA, PROFITS, REVENUE OR GOODWILL, REPUTATIONAL HARM, BUSINESS INTERRUPTION, ACCURACY OF RESULTS, OR COMPUTER FAILURE OR MALFUNCTION ARISING OUT OF OR IN CONNECTION WITH THE SERVICES OR (B) YOUR USE OF THE SERVICES, INCLUDING, WITHOUT LIMITATION, ANY INABILITY TO ACCESS OR USE OF THE SERVICES OR THE PURCHASE AND USE OF PRODUCTS OFFERED ON OR THROUGH THE SERVICES, EVEN IF WE OR ANY OTHER PERSON HAS FORSEEN OR BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE FOREGOING LIMITATION OF LIABILTY SHALL NOT APPLY TO LIABLITY OF A WHALECO PARTY FOR (I) DEATH OR PERSONAL INJURY CAUSED BY OUR GROSS NEGLIGENCE; OR FOR (II) ANY INJURY CAUSED BY OUR FRAUD OR FRAUDULENT MISREPRESENTATION.

16.2 THIS DISCLAIMER APPLIES, WITHOUT LIMITATION, TO THE MAXIMUM EXTENT PERMITTED UNDER LAW, ANY DAMAGES OR PERSONAL INJURY ARISING FROM ANY FAILURE OF PERFORMANCE, ERROR, OMISSION, INTERRUPTION, DELETION, DEFECTS, DELAY IN OPERATION OR TRANSMISSION, COMPUTER VIRUS, FILE CORRUPTION, COMMUNICATION-LINE FAILURE, NETWORK OR SYSTEM OUTAGE, ANY THEFT, DESTRUCTION, UNAUTHORIZED ACCESS TO, ALTERATION OF, LOSS OR USE OF, ANY RECORD OR DATA, AND ANY OTHER TANGIBLE OR INTANGIBLE LOSS.

16.3 YOU SPECIFICALLY ACKNOWLEDGE AND AGREE THAT WE SHALL NOT BE LIABLE FOR ANY DEFAMATORY, OFFENSIVE, OR ILLEGAL CONDUCT BY ANY SELLER OR USER OF THE SERVICES.

16.4 TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, UNDER NO CIRCUMSTANCES WILL THE TOTAL AGGREGATE AMOUNT THAT WHALECO PARTIES ARE LIABLE TO YOU EXCEED THE GREATER OF: (A) THE TOTAL AMOUNT PAID TO US BY YOU DURING THE ONE-MONTH PERIOD PRIOR TO THE ACT, OMISSION OR OCCURRENCE GIVING RISE TO SUCH LIABIITY; (B) $100.00; OR (C) THE REMEDY OR PENALTY IMPOSED BY THE STATUTE UNDER WHICH SUCH CLAIM ARISES. THE FOREGOING CAP ON LIABILTY SHALL NOT APPLY TO LIABLITY OF A WHALECO PARTY FOR (I) DEATH OR PERSONAL INJURY CAUSED BY OUR GROSS NEGLIGENCE; OR FOR (II) ANY INJURY CAUSED BY OUR FRAUD

OR FRAUDULENT MISREPRESENTATION. THE PRECEDING SENTENCE SHALL NOT PRECLUDE THE REQUIREMENT FOR YOU TO PROVE ACTUAL DAMAGES.

16.5 CERTAIN JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF CERTAIN DAMAGES OR IMPLIED WARRANTIES. IF THESE LAWS APPLY TO YOU, SOME OR ALL OF THE ABOVE EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO YOU, AND YOU MIGHT HAVE ADDITIONAL RIGHTS.

16.6 THE LIMITATIONS OF DAMAGES SET FORTH ABOVE ARE ESSENTIAL TO THE AGREEMENT BETWEEN YOU AND US.

**17. Indemnity**

17.1 To the fullest extent permitted by applicable law, you agree to indemnify and hold us, our parents, subsidiaries, affiliates, directors, officers, agents, employees, suppliers, licensors and partners (each, a "Whaleco Party" and collectively, the "Whaleco Parties") harmless from and against any and all claims, liabilities, damages, losses, and expenses (including reasonable attorneys' fees ) arising from or in connection with any third-party claims relating to: (a) your use of the Services, including without limitation, User Submissions or any actions taken by a third party using your account; (b) your violation of these Terms; (c) your violation of any rights of another party, including without limitation any copyright, property, or privacy right or any third-party agreement; or (d) your violation of any applicable laws, rules, or regulations. In the event of such a claim, suit, or action ("Claim"), we will attempt to provide notice of the Claim to the contact information we have for your account (provided that failure to deliver such notice shall not eliminate or reduce your indemnification obligations under these Terms).

17.2 We reserve the right, at our own cost, to assume the exclusive defense and control of any matter otherwise subject to indemnification by you, in which case you will fully cooperate with us in asserting any available defenses.

17.3 You agree that the provisions in this section will survive any termination of your Account, the Terms and/or your access to the Services.

**18. App Stores**

18.1 **Application License.**  Subject to your compliance with the Terms, we grant you a limited non-exclusive, non-transferable, non-sublicensable, revocable license to download, install and use a copy of the Temu mobile application ("Application") on a single mobile device or computer that you own or control and to run such copy of the Application solely for your own personal or internal business purposes.  Furthermore, with respect to any Application accessed through or downloaded from the Apple App Store (an "App Store Sourced Application"), you will only use the App Store Sourced Application (a) on an Apple-branded product that runs the iOS (Apple's proprietary operating system) and (b) as permitted by the "Usage Rules" set forth in the Apple App Store Terms of Service. Notwithstanding the first sentence in this section, with respect to any Application accessed through or downloaded from the Google Play store (a "Google Play Sourced Application"), you may have additional license rights with respect to use of the Application on a shared basis within your designated family group.

18.2 **App Stores.**  You acknowledge and agree that the availability of the Application and the Services is dependent on the third party from whom you received the Application license, e.g., the Apple App Store or Google Play (each, an "App **Store**").  You acknowledge that the Terms are between you and Whaleco and not with the App Store.  Whaleco, not the App Store, is solely responsible for The Services, including the Application, the content

thereof, maintenance, support services, and warranty therefor, and addressing any claims relating thereto (e.g., product liability, legal compliance or intellectual property infringement).  In order to use the Application, you must have access to a wireless network, and you agree to pay all fees associated with such access.  You also agree to pay all fees (if any) charged by the App Store in connection with The Services, including the Application.  You agree to comply with, and your license to use the Application is conditioned upon your compliance with all terms of agreement imposed by the applicable App Store when using any Service, including the Application. You acknowledge that the App Store (and its subsidiaries) are third-party beneficiaries of the Terms and will have the right to enforce it.

18.3   **Accessing and Downloading the Application from iTunes.**  The following applies to any App Store Sourced Application accessed through or downloaded from the Apple App Store:

18.3.1   You acknowledge and agree that (i) the Terms are concluded between you and Whaleco only, and not Apple, and (ii) Whaleco, not Apple, is solely responsible for the App Store Sourced Application and content thereof. Your use of the App Store Sourced Application must comply with the App Store Terms of Service.

18.3.2   You acknowledge that Apple has no obligation whatsoever to furnish any maintenance and support services with respect to the App Store Sourced Application.

18.3.3   In the event of any failure of the App Store Sourced Application to conform to any applicable warranty, you may notify Apple, and Apple will refund the purchase price for the App Store Sourced Application to you and to the maximum extent permitted by applicable law, Apple will have no other warranty obligation whatsoever with respect to the App Store Sourced Application. As between Whaleco and Apple, any other claims, losses, liabilities, damages, costs or expenses attributable to any failure to conform to any warranty will be the sole responsibility of Whaleco.

18.3.4   You and Whaleco acknowledge that, as between Whaleco and Apple, Apple is not responsible for addressing any claims you have or any claims of any third party relating to the App Store Sourced Application or your possession and use of the App Store Sourced Application, including, but not limited to: (i) product liability claims; (ii) any claim that the App Store Sourced Application fails to conform to any applicable legal or regulatory requirement; and (iii) claims arising under consumer protection or similar legislation.

18.3.5   You and Whaleco acknowledge that, in the event of any third-party claim that the App Store Sourced Application or your possession and use of that App Store Sourced Application infringes that third party's intellectual property rights, as between Whaleco and Apple, Whaleco, not Apple, will be solely responsible for the investigation, defense, settlement and discharge of any such intellectual property infringement claim to the extent required by the Terms.

18.3.6   You and Whaleco acknowledge and agree that Apple, and Apple's subsidiaries, are third-party beneficiaries of the Terms as related to your license of the App Store Sourced Application, and that, upon your acceptance of the terms and conditions of the Terms, Apple will have the right (and will be deemed to have accepted the right) to enforce the Terms as related to your license of the App Store Sourced Application against you as a third-party beneficiary thereof.

18.3.7   Without limiting any other terms of the Terms, you must comply with all applicable third-party terms of agreement when using the App Store Sourced Application.

## 19.   General

19.1. **Electronic Communications.** The communications between you and Whaleco may take place via electronic means, whether you visit the Services or send Whaleco e-mails, or whether Whaleco posts notices on the Services or communicates with you via e-mail. You consent to receive communications from us electronically, such as emails, texts, mobile push notices, and notices and messages on or through the Services. You acknowledge and agree that all terms and conditions, agreements, notices, disclosures, and other communications and documents that we provide to you electronically constitute and shall have the same legal effect as "in writing." The foregoing does not affect your statutory rights, including but not limited to the Electronic Signatures in Global and National Commerce Act at 15 U.S.C. §7001 et seq. ("E-Sign").

19.2. **Assignment.** You may not assign, delegate, or transfer these Terms, or your rights and obligations hereunder, to any other person in any way (by operation of law or otherwise) without our prior written consent, and any attempted assignment, subcontract, delegation, or transfer in violation of the foregoing will be null and void. We may transfer, assign, or delegate these Terms and its rights and obligations hereunder to any other person without your consent.

19.3. **Force Majeure.** We shall not be liable for any delay or failure to perform resulting from causes outside its reasonable control, including, but not limited to, acts of God, war, terrorism, riots, embargos, acts of civil or military authorities, fire, floods, accidents, pandemics, strikes, or shortages of transportation facilities, fuel, energy, labor, or materials.

19.4. **Choice of Law.** These Terms and any dispute of any sort that might arise between you and us hereunder will be governed by the laws of the State of New York and applicable federal laws of the United States of America, consistent with the Federal Arbitration Act, without regard to any principle of conflict-of-laws. The United Nations Convention on Contracts for the International Sale of Goods does not apply to these Terms. If you live outside of the United States, you may be entitled to the protection of the mandatory consumer protection provisions of your local consumer protection law.

19.5. **Exclusive Venue.** Any dispute of any sort between you and us that arises out of or in connection with the Services and is not subject to arbitration or eligible for small claims action, shall be decided exclusively by a court of competent jurisdiction located in New York, and you hereby consent to, and waive all defense of lack of personal jurisdiction and forum non conveniens with respect to venue and jurisdiction in the state and federal courts of New York, New York.

19.6. **Statute of Limitations.** You and Whaleco agree that regardless of any statute or law to the contrary, any claim arising out of or related to the Services must commence within one (1) year after the cause of action accrues. Otherwise, such cause of action is permanently barred.

19.7. **Notice.** You acknowledge and agree that we may give notice to you through email using the latest email address you provided to us, which constitutes effective notice. Therefore, you are responsible for keeping your email address information with us up to date. You may give notice to us at the following addresses:

If to Whaleco Inc.:

Whaleco Inc.
Suite 355, 31 St. James Avenue
Boston, Massachusetts 02116
USA

If to Elementary Innovation Pte. Ltd.:

Elementary Innovation Pte. Ltd.
6 Raffles Quay #14-06
Singapore (048580)

Such notice shall be deemed given when received by us by letter delivered by nationally recognized overnight delivery service or first-class postage prepaid mail at the above address.

19.8. **Export Control.** You undertake to use the Services and Products purchased on or through the Services in compliance with all applicable US or other export and re-export restrictions of relevant jurisdictions. In particular, you acknowledge and agree that the Services, including any products purchased on or through the Services, may not be exported or re-exported (a) into any United States embargoed countries, or (b) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Department of Commerce's Denied Person's List or Entity List. You represent and warrant that (i) you are not located in a country that is subject to a U.S. Government embargo, or that has been designated by the U.S. Government as a "terrorist supporting" country and (ii) you are not listed on any U.S. Government list of prohibited or restricted parties. You also will not use the Services nor the Products purchased on the Services for any purpose prohibited by any applicable law.

19.9. **Consumer Complaints.** In accordance with California Civil Code §1789.3, you may report complaints to the Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs by contacting them in writing at 400 R Street, Sacramento, CA 95814, or by telephone at (800) 952-5210.

19.10. **Waiver.** Our failure to respond to a breach by you or others does not waive our right to act with respect to subsequent or similar breaches.

19.11. **Severability.** If any provision of these Terms is found to be unenforceable or invalid, that provision will be limited or eliminated, to the minimum extent necessary, so that these Terms shall otherwise remain in full force and effect and enforceable.

19.12. **Third-Party Beneficiaries.** There are no third-party beneficiaries intended under these Terms.

19.13. **Entire Agreement.** The Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between the parties with respect to such subject matter.

**20.    DISPUTE RESOLUTION**

PLEASE READ THE FOLLOWING ARBITRATION AGREEMENT IN THIS SECTION ("ARBITRATION AGREEMENT") CAREFULLY. IT REQUIRES YOU AND WHALECO TO

ARBITRATE AGAINST ONE ANOTHER. **PLEASE BE AWARE THAT THIS SECTION 20 CONTAINS PROVISIONS GOVERNING HOW DISPUTES THAT YOU AND WHALECO HAVE AGAINST EACH OTHER WILL BE RESOLVED. AMONG OTHER THINGS, THIS SECTION 20 INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND WHALECO BE RESOLVED BY BINDING AND FINAL ARBITRATION.    THIS SECTION 20 ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER. PLEASE READ THIS SECTION 20 CAREFULLY.**

20.1. **Applicability of Arbitration Agreement**. Subject to the terms of this Arbitration Agreement, you and Whaleco agree that any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of the Services, any communications you receive, any products sold or distributed through the Services, or the Terms, including claims and disputes that arose between us before the effective date of the Terms (each, a "Dispute") will be resolved by binding arbitration, using the English language, rather than in court, except that: (1) you and Whaleco may assert claims or seek relief in small claims court if such claims qualify and remain in small claims court; or (2) you or Whaleco may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents); or (3) the law requires otherwise . For purposes of this Arbitration Agreement, "Dispute" will also include disputes that arose or involve facts occurring before the existence of this or any prior versions of the Terms as well as claims that may arise after the termination of the Terms.

20.2. **Informal Dispute Resolution**. There may be instances when a Dispute arises between you and Whaleco. If that occurs, Whaleco is committed to working with you to reach a reasonable resolution. You and Whaleco agree that good faith informal efforts to resolve Disputes can result in a prompt, low-cost and mutually beneficial outcome. You and Whaleco therefore agree that before either party commences arbitration against the other (or initiates an action in small claims court if a party so elects), we will personally meet and confer telephonically or via videoconference, in a good faith effort to resolve informally any Dispute covered by this Arbitration Agreement ("Informal Dispute Resolution Conference"). If you are represented by counsel, your counsel may participate in the conference, but you also agree to participate in the conference. The party initiating a Dispute must give notice to the other party in writing of its intent to initiate an Informal Dispute Resolution Conference ("Notice"), which shall occur within forty-five (45) days after the other party receives such Notice, unless an extension is mutually agreed upon by the parties in writing. Notice to Whaleco  that you intend to initiate an Informal Dispute Resolution Conference should be sent by email to dispute@temu.com or regular mail to our offices located at Whaleco Inc., Suite 355, 31 St. James Avenue, Boston, Massachusetts 02116, USA. The Notice must include: (1) your name, telephone number, mailing address, e-mail address associated with your account (if you have one); (2) the name, telephone number, mailing address and e-mail address of your counsel, if any; and (3) a description of your Dispute.

The Informal Dispute Resolution Conference shall be individualized such that a separate conference must be held each time either party initiates a Dispute, even if the same law firm or group of law firms represents multiple users in similar cases, unless all parties agree; multiple individuals initiating a Dispute cannot participate in the same Informal Dispute Resolution Conference unless all parties agree. In the time between a party receiving the Notice and the Informal Dispute Resolution Conference, nothing in this Arbitration Agreement shall prohibit the parties from engaging in informal communications to resolve the initiating party's Dispute. Engaging in the Informal Dispute Resolution Conference is a condition precedent and requirement that must be fulfilled before commencing arbitration. The statute of limitations and any filing fee

deadlines shall be tolled while the parties engage in the Informal Dispute Resolution Conference process required by this section.

20.3. **Waiver of Jury Trial**. **YOU AND WHALECO HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY.** You and Whaleco are instead electing that all Disputes shall be resolved by arbitration under this Arbitration Agreement, except as specified in Section 20.1 above. There is no judge or jury in arbitration, and court review of an arbitration award is subject to very limited review.

20.4. **Waiver of Class and Other Non-Individualized Relief**. **YOU AND WHALECO AGREE THAT, EXCEPT AS SPECIFIED IN SECTION 20.9, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS, AND THE PARTIES HEREBY WAIVE ALL RIGHTS TO HAVE ANY DISPUTE BE BROUGHT, HEARD, ADMINISTERED, RESOLVED, OR ARBITRATED ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MASS ACTION BASIS. ONLY INDIVIDUAL RELIEF IS AVAILABLE, AND DISPUTES OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.** Subject to this Arbitration Agreement, the arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by the party's individual claim. Nothing in this paragraph is intended to, nor shall it, affect the terms and conditions under Section 20.9. Notwithstanding anything to the contrary in this Arbitration Agreement, if a court decides by means of a final decision, not subject to any further appeal or recourse, that the limitations of this Section are invalid or unenforceable as to a particular claim or request for relief (such as a request for public injunctive relief), you and Whaleco agree that that particular claim or request for relief (and only that particular claim or request for relief) shall be severed from the arbitration and may be litigated in the state or federal courts located in the State of New York. All other Disputes shall be arbitrated or litigated in small claims court. This subsection does not prevent you or Whaleco from participating in a class-wide settlement of claims.

20.5. **Rules and Forum**. The Terms evidence a transaction involving interstate commerce; and notwithstanding any other provision herein with respect to the applicable substantive law, the Federal Arbitration Act, 9 U.S.C. § 1 et seq., will govern the interpretation and enforcement of this Arbitration Agreement and any arbitration proceedings. If the Informal Dispute Resolution Process described above does not resolve satisfactorily within sixty (60) days after receipt of Notice, you and Whaleco agree that either party shall have the right to finally resolve the Dispute through binding arbitration. The arbitration will be conducted by American Arbitration Association (the "AAA"), an established alternative dispute resolution provider, under its rules, including Consumer Arbitration Rules (the "AAA Rules"), then effect, unless otherwise required by law.  AAA's rules are also available at https://adr.org/consumer, or by calling 1-800-778-7879. If AAA is not available to arbitrate, the parties will select an alternative arbitral forum. Your responsibility to pay any AAA fees and costs will be solely as set forth in the applicable AAA rules.

A party who wishes to initiate arbitration must provide the other party with a request for arbitration (the "Request"). The Request must include: (1) the name, telephone number, mailing address, e-mail address of the party seeking arbitration and the account username (if applicable) as well as the email address associated with any applicable account; (2) a statement of the legal claims being asserted and the factual bases of those claims; (3) a description of the remedy sought and an accurate, good-faith calculation of the amount in controversy in United States Dollars; (4) a statement certifying completion of the Informal Dispute Resolution process as described above;

and (5) evidence that the requesting party has paid any necessary filing fees in connection with such arbitration.

If the party requesting arbitration is represented by counsel, the Request shall also include counsel's name, telephone number, mailing address, and email address. Such counsel must also sign the Request. By signing the Request, counsel certifies to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that: (1) the Request is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (2) the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) the factual and damages contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Unless you and Whaleco otherwise agree, or the Batch Arbitration process discussed in Section 20.9 is triggered, the arbitration will be conducted in the county where you reside. Subject to the applicable AAA rules, the arbitrator may direct a limited and reasonable exchange of information between the parties, consistent with the expedited nature of the arbitration.

You and Whaleco agree that all materials and documents exchanged during the arbitration proceedings shall be kept confidential and shall not be shared with anyone except the parties' attorneys, accountants, or business advisors, and then subject to the condition that they agree to keep all materials and documents exchanged during the arbitration proceedings confidential.

20.6. **Arbitrator.** The arbitrator will be either a retired judge or an attorney licensed to practice law in the State of New York, and will be selected by the parties from the AAA roster of consumer dispute arbitrators. If the parties are unable to agree upon an arbitrator within thirty-five (35) days of delivery of the Request, then AAA will appoint the arbitrator in accordance with the applicable AAA rules, provided that if the Batch Arbitration process under Section 20.9 is triggered, AAA will appoint the arbitrator for each batch.

20.7. **Authority of Arbitrator**. The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement, except for the following: (1) all Disputes arising out of or relating to Section 20.4, including any claim that all or part of Section 20.4 is unenforceable, illegal, void or voidable, or that Section 20.4 has been breached, shall be decided by a court of competent jurisdiction and not by an arbitrator; (2) except as expressly contemplated in Section 20.9, all Disputes about the payment of arbitration fees shall be decided only by a court of competent jurisdiction and not by an arbitrator; (3) all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction and not by an arbitrator; and (4) all Disputes about which version of the Arbitration Agreement applies shall be decided only by a court of competent jurisdiction and not by an arbitrator. The arbitration proceeding will not be consolidated with any other matters or joined with any other cases or parties, except as expressly provided in Section 20.9. The arbitrator shall have the authority to grant motions dispositive of all or part of any Dispute. The arbitrator shall issue a written award and statement of decision describing the essential findings and conclusions on which the award is based, including the calculation of any damages awarded. The award of the arbitrator is final and binding upon you and us. Judgment on the arbitration award may be entered in any court having jurisdiction.

20.8. **Attorneys' Fees and Costs**. The parties shall bear their own attorneys' fees and costs in arbitration unless the arbitrator finds that either the substance of the Dispute or the relief sought in the Request was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)). If you or Whaleco need to invoke the authority of a court of competent jurisdiction to compel arbitration, then the party that obtains an order compelling arbitration in such action shall have the right to collect from the other party its reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing an order compelling arbitration. The prevailing party in any court action relating to whether either party has satisfied any condition precedent to arbitration, including the Informal Dispute Resolution Process, is entitled to recover their reasonable costs, necessary disbursements, and reasonable attorneys' fees and costs.

20.9. **Batch Arbitration**. To increase the efficiency of administration and resolution of arbitrations, you and Whaleco agree that in the event that there are one hundred (100) or more individual Requests of a substantially similar nature filed against Whaleco by or with the assistance of the same law firm, group of law firms, or organizations, within a thirty (30) day period (or as soon as possible thereafter), AAA shall (1) administer the arbitration demands in batches of 100 Requests per batch (plus, to the extent there are less than 100 Requests left over after the batching described above, a final batch consisting of the remaining Requests); (2) appoint one arbitrator for each batch; and (3) provide for the resolution of each batch as a single consolidated arbitration with one set of filing and administrative fees due per side per batch, one procedural calendar, one hearing (if any) in a place to be determined by the arbitrator, and one final award ("Batch Arbitration").

All parties agree that Requests are of a "substantially similar nature" if they arise out of or relate to the same event or factual scenario and raise the same or similar legal issues and seek the same or similar relief. To the extent the parties disagree on the application of the Batch Arbitration process, the disagreeing party shall advise AAA, and AAA shall appoint a sole standing arbitrator to determine the applicability of the Batch Arbitration process ("Administrative Arbitrator"). In an effort to expedite resolution of any such dispute by the Administrative Arbitrator, the parties agree the Administrative Arbitrator may set forth such procedures as are necessary to resolve any disputes promptly. The Administrative Arbitrator's fees shall be paid by Whaleco.

You and Whaleco agree to cooperate in good faith with AAA to implement the Batch Arbitration process including the payment of single filing and administrative fees for batches of Requests, as well as any steps to minimize the time and costs of arbitration, which may include: (1) the appointment of a discovery special master to assist the arbitrator in the resolution of discovery disputes; and (2) the adoption of an expedited calendar of the arbitration proceedings. This Batch Arbitration provision shall in no way be interpreted as authorizing a class, collective and/or mass arbitration or action of any kind, or arbitration involving joint or consolidated claims under any circumstances, except as expressly set forth in this provision.

20.10. **30-Day Right to Opt Out.** You have the right to opt out of the provisions of this Arbitration Agreement by sending written notice of your decision to opt out to: Whaleco Inc., 8 The Green Suite #12868, Dover, DE 19901, within thirty (30) days after first becoming subject to this Arbitration Agreement. Your notice must include your name and address, the email address you used to set up your Account (if you have one), and an unequivocal statement that you want to opt out of this Arbitration Agreement. If you opt out of this Arbitration Agreement, all other parts of these Terms will continue to apply

to you. Opting out of this Arbitration Agreement has no effect on any other arbitration agreements that you may currently have, or may enter in the future, with us.

20.11.  **Invalidity, Expiration.** Except as provided in Section 20.9, if any part or parts of this Arbitration Agreement are found under the law to be invalid or unenforceable, then such specific part or parts shall be of no force and effect and shall be severed and the remainder of the Arbitration Agreement shall continue in full force and effect. You further agree that any Dispute that you have with Whaleco as detailed in this Arbitration Agreement must be initiated via arbitration within the applicable statute of limitation for that claim or controversy, or it will be forever time barred. Likewise, you agree that all applicable statutes of limitation will apply to such arbitration in the same manner as those statutes of limitation would apply in the applicable court of competent jurisdiction.

20.12.  **Modification.** Notwithstanding any provision in the Terms to the contrary, we agree that if Whaleco makes any future material change to this Arbitration Agreement, it will notify you. Unless you reject the change within thirty (30) days of such change becoming effective by writing to Whaleco at: Whaleco Inc., 8 The Green Suite #12868, Dover, DE 19901, your continued use of the Services, including the acceptance of products and services offered on or through the Services, following the posting of changes to this Arbitration Agreement constitutes your acceptance of any such changes. Changes to this Arbitration Agreement do not provide you with a new opportunity to opt out of the Arbitration Agreement if you have previously agreed to a version of the Terms and did not validly opt out of arbitration. If you reject any change or update to this Arbitration Agreement, and you were bound by an existing agreement to arbitrate Disputes arising out of or relating in any way to your access to or use of the Services, any communications you receive, any products sold or distributed through the Services or the Terms, the provisions of this Arbitration Agreement as of the date you first accepted the Terms (or accepted any subsequent changes to the Terms) remain in full force and effect. Whaleco will continue to honor any valid opt outs of the Arbitration Agreement that you made to a prior version of the Terms.

# **EXHIBIT C**

# **ACCOUNT INFORMATION**

| User ID | Registration/Login Date | Registration/Login Platform | Registration/Login Channel |
|---------|------------------------|----------------------------|---------------------------|
| 31128482403143 | 12/30/2022 | App | Google |
| 31128482403143 | 3/30/2023 | App | Apple |

Smith v. Temu
Trinh Declaration - EXHIBIT C

# **EXHIBIT D**

## **TEXT OPT-IN**

