IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HEATHER SMITH, individually and on        :
behalf of all others similarly situated,
                                          :
        Plaintiff,                            Case No. 5:23-cv-00559-D
                                          :
    v.
                                          :
WHALECO INC. d/b/a TEMU,
                                          :
        Defendant.                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO COMPEL ARBITRATION**

## I.     Introduction

In her Opposition (Dkt. 39) to Temu's Motion to Compel Arbitration ("Motion"), Plaintiff tellingly never once argues that ***she*** did not actually see, read, or understand the conspicuously-placed hyperlink to the "Terms of Use" ("Terms") on Temu's account pages, inviting her ***more than once*** to read the Terms containing an individual arbitration agreement, when she set up and signed in to her account. She also does not argue she did not click the "Continue" buttons or did not know that she was agreeing to the Terms by doing so. She also did not attach any evidence to her brief asserting such facts or rebutting the facts presented in Temu's Motion or supporting evidence, despite ***her obligation*** to do so.[1] She also does not dispute, and thus concedes,[2] that: (i) absent a finding in her favor on contract formation, the arbitration agreement here is legally valid and enforceable; (ii) as such, per the Terms, she must be compelled to arbitrate her claim against Temu (which is within the scope of the Terms) on an individual basis; and (iii) this case must be dismissed (or at least stayed) in favor of such an arbitration. *See* Dkts. 33-1 at 4-25; Dkt. 33-3 and Exhibits thereto.

Rather, the sole issue raised in her Opposition is whether an agreement to arbitrate was ever formed in the first place. Plaintiff's core (albeit unsupported) argument on this front can be summarized as follows: there is no agreement simply because, when she set up her Temu account and later accessed it, some text appeared between the two "Continue with"

---

[1] *Levine v. Vitamin Cottage Nat. Food Markets, Inc.,* 2021 WL 4439800, at *4 (D. Colo. Sept. 27, 2021) (Under the FAA, courts apply "'a standard similar to that governing motions for summary judgment'" ***to both parties***) (quoting *Stein v. Burt-Kuni One, LLC,* 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005)). Temu met its evidentiary burden here; Plaintiff did not.

[2] *See, e.g., Acosta v. Allegion, PLC,* 2022 WL 764432, at *7 (D. Kan. Mar. 11, 2022) (citing *Parker Excavating, Inc. v. Lafarge W., Inc.,* 863 F.3d 1213, 1222 (10th Cir. 2017)) (failure to address an argument in opposition to a motion "constitutes a waiver of the point").

action buttons that she pressed and the easily-readable, bolded, hyperlinked, and unambiguous words on the same page stating "By continuing you agree to our **Terms of Use**" appearing in close temporal and spatial proximity to those action buttons. *See, e.g.,* Dkt. 39 at 17-18; *see also* Dkt. 33-1 at 5-7 and Ex. A thereto. She is wrong on many levels.

## II. <u>Plaintiff Failed to Meet Her Evidentiary Burden in Opposing the Motion</u>.

As a threshold matter, the Motion should be granted simply because Plaintiff did not meet her evidentiary burden in opposing it.[3] As one court in the Tenth Circuit aptly noted, "[w]ith respect to internet arbitration agreements [like the one at issue here], courts 'routinely' uphold such agreements provided the user had [(1)] 'reasonable notice, either actual or constructive, of the terms of the putative agreement and [(2)] manifested asset to those terms.'" *Petrie v. GoSmith, Inc.,* 360 F. Supp. 3d 1159, 1161 (D. Colo. 2019) (quoting *Vernon v. Qwest Commc'ns Int'l, Inc.,* 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012)). Further, once Temu met its initial burden of presenting evidence sufficient to demonstrate an enforceable arbitration agreement, the ***burden then shifted to Plaintiff*** to present "'evidence comparable to that identified in Fed. R. Civ. P. 56'" with her Opposition raising a genuine issue of fact on the formation issue. *Levine,* 2021 WL 4439800, at *4 (quoting *Stein,* 396 F. Supp. 2d at 1213). Courts in this Circuit frequently grant motions to compel arbitration where non-movants fail to meet this burden. *See, e.g., id.* at *7 (collecting cases). In short,

---

[3] Plaintiff cites *Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co.* to suggest she should receive the benefit of the "doubt" on the formation issue. Dkt. 39 at 7. Yet, the party opposing arbitration there "produced evidence sufficient to substantiate its unequivocal denial." 272 F. App'x 782, 786 (11th Cir. 2008). Plaintiff has not made such a denial. Further, per the Supreme Court, "[a]ny doubts concerning the scope of arbitrable issues [are to] be resolved ***in favor of arbitration***." Dkt. 33-1 at 12, n.4 (quoting *Conception*) (emphasis added).

"speculative arguments" in a brief challenging contract formation are "not enough to raise a genuine dispute about the existence of an arbitration agreement." *Beattie v. TTEC Healthcare Sol.*, 2019 WL 2189481, at *2 (D. Colo. May 21, 2019). Yet, that is all Plaintiff offers here.

*Fontanez v. Whaleco, Inc.*, a recent decision that is attached to the Motion and compelled arbitration under these same Terms, is instructive and on-point. There, Temu moved to compel arbitration in a case involving the exact same sign-in processes Plaintiff used here,[4] with the Terms hyperlinked in a bold contrasting text. *See* Dkt. 33-2, attaching Case No. 53-2023CA-000374, slip op., at pp. 3-4 (Fla. Cir. Ct. Aug. 29, 2023). That court noted the plaintiff there likewise "**never specifically argue[d] that she did not have actual knowledge of [Temu's] Terms of Use**." *Id.* at 4-5 (emphasis added). Thus, after considering the layout of Temu's page, the court found that, "by clicking 'Continue,' [plaintiff] assented to the Terms of Use that contained an arbitration clause." *Id.* at 5. *See also Clements v. Alto Tr. Co.,* 2023 WL 5002472, at *7 (D.N.M. Aug. 4, 2023) (enforcing online arbitration agreement where, as here, there was no evidence presented suggesting that the plaintiff opposing arbitration "was unable to see or click on the hyperlinks" to the operative terms).

The result should be the same here. Temu indisputably met its initial burden to submit evidence showing the existence of an enforceable contract with the Motion. *See* Dkts. 33-3 and Exs. A and C thereto (sworn declaration and authenticated exhibits showing Plaintiff's

---

[4] The only material difference in *Fontanez* was that the plaintiff there clicked the "Continue with Apple" button once, which is placed slightly below the "Continue with Google" button Plaintiff first clicked here. *See* Dkt. 33-1 at 5. In addition, Plaintiff here was presented the Terms on a subsequent page for her Google account when she signed up, and used the "Continue with Apple" button (using the same initial page) when later logging in. *See id.* at 5-6; Ex. A to Dkt. 33-3. Thus, Plaintiff was presented with the Terms more than once and manifested her assent to them each time by clicking the "Continue" buttons.

3

sign up and repeated access of her Temu account). In contrast, Plaintiff relies *only* on the unsworn arguments of her counsel and does not offer any supporting evidence with her brief at all, let alone any that is "comparable to that identified" in Rule 56. Yet, Plaintiff's silence does not rebut Temu's evidence. As such, the Motion should be granted. *See Levine* and *Clements*, *supra*. *See also Beattie*, 2019 WL 2189481, at *2 (compelling arbitration where, like here, defendant submitted evidence showing plaintiffs manifested assent by clicking "Accept" button on an opt-in page, and plaintiffs did "not unequivocally deny that they agreed to the arbitration agreement"); *Petrie*, 360 F. Supp. 3d at 1163 (ruling similarly).

### III.  Plaintiff Was At Least on "Inquiry" Notice of and Assented to the Terms.

Assuming *arguendo* Plaintiff did not have actual knowledge of the Terms (which her Opposition does not argue), she is still bound by them if a "reasonably prudent internet user" would have been on "inquiry" notice of them. Dkt. 33-1 at 14-17 (collecting cases). The authorities in the Motion and below show this is all a question of context: (i) the context of how the Terms are presented on the screen, and (ii) the context of the relationship the user is entering into using the account pages. Plaintiff's Opposition focuses only on the former and ignores the latter. *See* Dkt. 39 at 10-24. Regardless, Plaintiff is wrong for several reasons:

**First**, Plaintiff speculates (1) the "intervening presence" of other "Continue" buttons on the page—*i.e.,* giving users the option to "Continue" the sign-up/sign-in process using the main button "OR" to "Continue with" the process using their Google, Facebook, Twitter or Apple accounts—and (2) the short "distance" between the two "Continue with" buttons she pressed and the operative assent text—*i.e.,* "By continuing, you agree to our **Terms of Use**"—are dispositive on the "inquiry" notice and assent prongs. Dkt. 39 at 18-19. Not so.

4

As the Court can plainly see, all this information is presented within the same clean, uncluttered, white-backgrounded action box all on a single screen. *See* Ex. A to Dkt. 33-3. The operative text is in plain English, is dark and legible (even in Plaintiff's brief), and is in close proximity to all the buttons. *Id.* The two choices are to: (a) "Continue" using the main button, "OR" (b) "Continue with" the signup/in using a Google, Facebook, Apple, or Twitter account. *Id.* The operative assent text begins "By continuing, you agree . . . " *Id.* **All these involve "continuing" with the sign-up/sign-in process.** There is no basis to conclude any reasonably prudent internet user signing up for or accessing a Temu account would think the operative "By continuing, you agree to our **Terms of Use**" text is limited to just the four "Continue with" buttons—even though those are what Plaintiff pressed—as she oddly argues. Rather, through the consistent use of the verb "continue" on the page and the capitalized "OR" between the "Continue" button and the other four "Continue with" buttons, a user would understand that (i) the operative text applies both to those "continuing" with Google, Facebook, Twitter, or Apple accounts and those using the orange "Continue" button; and (ii) by clicking any of those "continue" buttons, he or she was assenting to the Terms.

**Second**, other courts have found that the "intervening presence" of other buttons and the "distance" of the operative text, alone, does not change the result. For example, in *Walker v. Neutron Holdings, Inc.,* the user went through a substantially similar process, whereby (1) "[t]he User Agreement notice appear[ed] immediately below the two buttons on the sign-in page, which prompt the user to fill in their phone number and select 'NEXT' or select 'Continue with Facebook'" on an all-white background; (2) the operative text at the bottom of the page (under the second button) stated "By signing up, I confirm that I am at least 18

5

years old, and that I have read and agreed to Lime's User Agreement & Terms of Service"; and (3) the phrases "User Agreement" and "Terms of Service" were in bold (albeit smaller) text, like for Temu's account pages Plaintiff used here. 2020 WL 703268, at *3 (W.D. Tex. Feb. 11, 2020). Distinguishing the *Cullinane* case (on which Plaintiff relies and is discussed below), the *Walker* court held that "a reasonable user would view the [defendant's] sign-in screen and see that the User Agreement is part of the offer to proceed with the transaction by clicking 'NEXT' or 'Continue with Facebook.'" *Id*. at *4. *Fontanez* and *Walker* are not alone, as other courts have reached the same conclusion with sign-up/sign-in pages substantially similar to Temu's. *See, e.g.,* Dkt. 33-1 at 17 (citing *Babcock, Selden*, *Meyer*). These on-point cases (and many others)[5] show that the operative assent text need **not** be immediately next to the action button, and only needs to be presented in a clear and legible fashion, in close spatial and temporal proximity to the button. That all happened in this case.

**Third**, what Plaintiff ignores is that, through Temu's action box, a user like Plaintiff is "sign[ing] in" or "register[ing]" for an ***ongoing relationship***—which ***inherently brings with it contractual terms*** to govern the relationship. *Oberstein v. Live Nat'n Entm't, Inc.*, 60 F.4th 505, 516 (9th Cir. 2023) (enforcing terms of use and compelling arbitration). In *Oberstein*, the court found the expectation of a continuing relationship, the presence of the notices of the terms inside the action box near the operative buttons, and distinguishing the links from the rest of the text were sufficient to put a reasonably prudent user on inquiry

---

[5] Plaintiff misconstrues some of Temu's cited authorities in this regard, while ignoring others. *See, e.g.,* Dkt. 39 at 22-23 & n.3 (citing various cases). While local briefing limits do not permit Temu to address all the ways Plaintiff is incorrect here, it is readily apparent that each case cited in the Motion is directly on-point and supports granting the Motion.

6

notice of the terms, and thus be bound by them. *Id.* This Court should rule similarly.

Here, Plaintiff created and used a Temu account contemplating a continuing relationship between the parties by clicking the "Continue with Google" and "Continue with Apple" buttons in the same action box, thereby putting her on inquiry notice (each time) to look for terms that would govern that continuing relationship.[6] The operative text was in close spatial and temporal proximity to the buttons, "not buried on the bottom of the []page or placed outside the action box," and the link to the Terms was "distinguished from the rest of the text" on the page. *Id.* That is sufficient to show Plaintiff was on inquiry notice of and manifested her assent to the Terms.[7] Nothing in her Opposition compels a contrary result.

IV.   **Plaintiff's Cited Authorities are Distinguishable and Inapposite.**

In contrast, Plaintiff's cited authorities are readily distinguishable for several reasons:

**First**, Plaintiff cites *Johnson v. Whaleco* heavily throughout her Opposition. Respectfully, *Johnson* is of no moment here, as that opinion is plainly inapposite, was wrongly-decided, and is contrary to well-settled law in the Tenth Circuit. Indeed, the *Johnson* court, *inter alia,* (**1**) applied Eleventh Circuit and Florida law, which indisputably do not apply here (*see* Dkt. 33-1 at 10 & n.3); (**2**) incorrectly treated the online agreement at issue as a "browsewrap" agreement, whereas the Motion shows that courts in this Circuit and elsewhere have largely considered similar online agreements as "clickwrap" agreements (*see id.* at 13-17 & n.6 (collecting cases)), which are treated differently than browsewraps and are

---

[6] As the *Oberstein* court aptly noted, a reasonable user like Plaintiff who is setting up a user account (as opposed to a user signing up for a free trial or making a one-time purchase, which is merely short-lived) contemplates "some sort of continuing relationship that would have put users on notice for a link to the terms of that continuing relationship." *Id.* at 516.

[7] *See, e.g., Nichols v. Google LLC,* 2023 WL 5938917, at *2–4 (D. Colo. Sept. 12, 2023).

7

routinely enforced across the country; (**3**) did not correctly recognize the existence of "hybrid" (a.k.a. "sign-in") wrap agreements—like other courts in the Eleventh Circuit[8] and some in this Circuit have (*see* Dkt. 33-1 at 13, n.6)—which are also treated differently and routinely enforced; and (**4**) most significantly, did not apply the Rule 56 summary judgment standard—like courts in this Circuit <u>must</u> do, as the Motion shows (*see* Dkt. 33-1 at 11 (collecting cases))—and thus improperly placed no evidentiary burden on the plaintiff.[9]

**Second**, Plaintiff also misconstrues or misapplies her other cited authorities. For example, she describes *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021), as addressing an "identical contention" on an action box with "features identical" to Temu's action box Dkt. 39 at 16-17. But the *Sellers* action box is <u>not</u> remotely "identical" to Temu's action box—rather, it was very cluttered, had smaller text, and a non-contrasting <u>black</u> background. In contrast, *Fontanez* addressed an "identical contention" about ***the exact same action box at issue here,*** and that court ruled in Temu's favor. *See* Dkt. 33-2 at pp. 3-5.

*Cullen* and *Fisher* involved <u>paper</u> contracts, and should be disregarded for that reason alone. Further, in *Cullen*, the operative text was in papers the court "was hard-pressed to identify, let alone read." *Cullen v. Shutterfly Lifetouch, LLC*, 2021 WL 2000247, at *8 (N.D. Cal. May 19, 2021). In contrast, Temu's text is obvious and legible. *Fisher* also addressed

---

[8] *E.g., Babcock v. Neutron Hldgs, Inc.,* 454 F. Supp. 3d 1222, 1230–34 (S.D. Fla. 2020).

[9] Indeed, the same standards apply in the Eleventh Circuit. *See, e.g., Bazemore v. Jefferson Cap. Sys., LLC,* 827 F.3d 1325, 1333 (11th Cir. 2016) (holding the Rule 56 standard is to be applied to motions to compel arbitration); *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1325 (S.D. Fla. 2016) ("Because it is undisputed that Plaintiff [executed the arbitration agreement at issue], the burden then shifts to Plaintiff to show that no valid contract existed and to meet that burden [ ]he must "***unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial***.'") (quoting *Magnolia Capital*, 272 F.App'x. at 785) (emphasis added).

whether the contract hid the arbitration provision, and held it was "clear and prominent" to a "literate person." *Fisher v. Sutton Place/Pinnacle A.M.S.,* 2008 WL 2095417, at *2 (S.D. Ind. May 16, 2008). The same is true for Temu's provision. *See* Ex. B to Dkt. 33-3, § 20.

The page in *Cullinane* and one of the pages in *Wilson* involved operative text that was gray on a black background—"an insufficient contrast," per the *Wilson* court.[10] While Plaintiff mischaracterizes how the Temu pages appeared,[11] there is no issue with "contrast." Rather, the operative text at issue is dark, clear, and legible (even in Plaintiff's brief), and presented in roughly the same size font as all the other text on the page (including the buttons) against an all-white background on a single page (no scrolling needed). Moreover, in *Berkson* and *Applebaum*,[12] the plaintiffs apparently submitted ***sworn declarations*** in support of their opposition to the defendants' motions to compel arbitration, denying clicking the check box next to the terms at issue (and thus never demonstrating their assent), seeing the hyperlinks to the terms on the page, or reading them. Again, Plaintiff submitted nothing here.

**Third**, although the order page at issue in *Nicosia v. Amazon.com, Inc.*—which was ***decided under Rule 12(b)(6)***, where the court was obligated to accept the pled allegations as true and did not consider any evidence—had its operative text in a dark color against a white background (like in this case), that page otherwise materially differs from the Temu pages

---

[10] *See Cullinane v. Uber Technologies, Inc.* 893 F.3d 53, 57-58, 64 (1st Cir. 2018); *Wilson v. Redbox Automated Retail, Inc.*, 448 F. Supp. 3d 873, 879-80 (N.D. Ill. 2020).

[11] For example, Plaintiff repeatedly asserts that four of the options to "Continue" were "colorful," as if that were dispositive. *See, e.g.,* Dkt. 39 at 17, 20. It is not, and it is also factually inaccurate. Those four "Continue" buttons are the ***same size*** as the main "Continue" button (which is certainly not "giant"), with the same size text, are black text on a white background, and the only color is the logo for each platform (*e.g.,* Google, Apple, etc.).

[12] *See Berkson v. Gogo LLC,* 97 F. Supp. 3d 359, 371-404 (E.D.N.Y. 2015); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 465-67 (S.D.N.Y. 2017).

discussed in the Motion. *Compare* 834 F.3d 220, 241-42 (2d Cir. 2016)*, with* Ex. A to Dkt. 33-3. Contrasting the Second Circuit's concerns about the page in *Nicosia* with Temu's account pages: (**1**) there were "between fifteen to twenty-five links" on the *Nicosia* page (only three here – "Terms of Use," "Privacy Policy & Cookie Policy," and "Trouble signing in?"); (**2**) the "text is displayed in at least four font sizes and six colors" (here, the text in the Temu action box is in three barely-distinguishable font sizes—about 13 to 15 pixels—and all in a dark color); (**3**) there was "various text … alongside multiple buttons and promotional advertisements" (for Temu, zero ads; and the only buttons are the five options to "Continue"); and (**4**) there was a variety of other information on the *Nicosia* page, like the address, credit card info, and purchase summary, that was "sufficiently distracting so as to temper whatever effect the notification has" (here, no such distractions). 834 F.3d at 237.

**Finally**, the Second Circuit distinguished the *Nicosia* page's clutter in *Meyer v. Uber Tech., Inc.*, 868 F.3d 66 (2d Cir. 2017) (which Plaintiff also cited in her brief) in the analogous arbitration motion / Rule 56 context, holding that an "uncluttered" page --

> with only fields for the user to enter his or her credit card details, buttons to register for a user account or to connect the user's pre-existing PayPal account or Google Wallet to the Uber account, and the warning that "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY" . . . [and no] need to scroll beyond what is immediately visible to find notice of the Terms of Service

-- is enough to put a reasonably prudent user on notice the terms would govern the relationship, going forward. *Id.* at 78-79. Similarly, the Temu action box Plaintiff used multiple times fits on a single page (no scrolling, no clutter), asks the user only if they wish to "Continue" with signing in or logging on, and informs the user, "By continuing, you agree to our **Terms of Use**…." The *Meyer* agreement was held enforceable. So too is Temu's.

10

Dated: February 9, 2024             Respectfully submitted by:

SMITH GAMBRELL & RUSSELL LLP

*/s/ Robert A. Stines*
Robert A. Stines (admitted *pro hac vice*)
Florida Bar No. 78447
201 N. Franklin Street, Suite 3550
Tampa, Florida 33602
T: 813-488-2920
Email: rstines@sgrlaw.com
          vwilliams@sgrlaw.com
          daigotti@sgrlaw.com

John W. McGuinness (*pro hac* to be requested)
A. Paul Heeringa (*pro hac* to be requested)
MANATT, PHELPS & PHILLIPS LLP
151 N. Franklin Street, Ste. 2600
Chicago, Illinois 60606
T: 312-529-6300
Email: jmcguinness@manatt.com
  pheeringa@manatt.com

John A. Burkhardt, OBA #1336
SCHAFFER HERRING PLLC
7134 S. Yale, Ste. 300
Tulsa, Oklahoma 74136
T: 918-856-5378
Email: john.burkhardt@schafferherring.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 9, 2024, a true and correct copy of the foregoing was electronically filed with the Court's CM/ECF system, which will send a notice to all counsel of record.

                                        */s/ Robert A. Stines*
                                        Robert A. Stines